HENRY HARBECK, Appellant, *v.* SARAH KATHARINE PUPIN et al., as Executors, etc., Respondents.

In an action against the executors of A. to recover a balance unpaid upon a note executed by the firm of W. & Co., of which firm plaintiff claimed that A. was a dormant partner, the complaint alleged that a judgment by confession was entered against the co-partners other than A.; that, pursuant to a compromise agreement, plaintiff executed a release to the members of the firm who confessed the judgment, otherthan W. The release recited that said firm was indebted to plaintiff "by virtue of a judgment;" that he had agreed with the members of the firm, other than W., to compromise his "claim on them individually in respect of the said indebtedness." The release then, by its terms, released and discharged the members of the late firm other than W. from all individual liability in respect of the said indebtedness, and further stated that it should operate to release and discharge "all and every person or persons other than" W. of and from all liability "growing out of the indebtedness aforesaid." *Held,* that the release not only covered and operated upon the judgment, but also the note, and released all persons other than W.; and so that, assuming A. to have been a dormant partner, his liability was covered and he was discharged.

At the time of the confession of judgment the attorney for the members of the firm who joined in the confession gave the names of the members without mentioning that of A., whom he had no authority to represent; at the time of the execution of the release, which was drawn by said attorney, he was authorized to act for A. *Held,* that defendants were not estopped from claiming that the intended and legal effect should be given to the release; that all that could be claimed was a representation that A. was not a member of the firm, and an estoppel would simply prevent a denial of that assertion.

Also *held,* that plaintiff, while retaining what he had received under the compromise agreement, could not seek to so reform it as to annul it as a contract operative between him and A.

Also *held,* that the principle that where one deals with a known member of a firm so as to discharge him, the release does not operate to set free an unknown and dormant partner, did not apply where, as here, there is an express covenant to release the dormant partner.

(Argued January 22, 1895; decided February 26, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon

an order made April 13, 1894, which affirmed a judgment in favor of defendants entered upon an order dismissing the complaint on trial at Circuit.

This action was brought against the executors of the will of Frederick K. Agate, deceased, to recover a balance unpaid upon a promissory note made by the firm of W. H. Whitaker & Co. The complaint alleged that William H. Whitaker, Sanford W. Battershall, John E. D. Grainger and Frederick K. Agate were the members of said firm; that on or about September 21, 1885, judgment by confession was entered upon said note against the members of said firm except Agate, and an execution issued thereon was returned unsatisfied; that on March 18, 1886, said firm having been dissolved Battershall and Grainger made a separate composition with plaintiff and he executed to them a release under seal whereby he released the said Battershall and the said Grainger, and their estates and the estates of each of them, of and from all individual liability, claim and demand whatever, for, or in respect of, the said indebtedness existing by virtue of said judgment, that being the only indebtedness or liability incurred by the said Grainger and Battershall to the plaintiff by reason of their connection with the said partnership, and in and by which release it was expressly stated and provided that the said release was made pursuant to section .1942 of the Code of Civil Procedure, and should have no greater or other effect than as by said act and by said release was provided. But said release contained no clause stating in terms that the said Harbeck released the said Grainger and Battershall from all liability incurred by reason of their connection with the partnership.

Defendants' answer admitted that Battershall and Grainger made a separate composition with plaintiff, and executed a release, but denied that its contents were accurately stated in the complaint and alleged that plaintiff thereby released all the members of said firm except Whitaker and thereby released defendants' testator. It was claimed by plaintiff that Agate was a dormant partner in the firm at the time of the

execution of the note and that at the time of the execution of
the release plaintiff was ignorant of this fact.

The following is the release referred to :

"WHEREAS, the late co-partnership firm of W. H. Whita-
ker & Co., of the city, county and state of New York, are
indebted to me, the undersigned, Henry Harbeck, of the city,
county and state of New York, in the sum of thirty thousand
seven hundred and fifty-four and thirty-three one-hundredths
dollars ($30,754.33), with interest from the twenty-first day of
September, 1885, by virtue of a judgment recovered in the
Supreme Court of the state of New York, held in and for the
city and county of New York, in an action wherein said
Henry Harbeck was the plaintiff and the said late firm were
defendants ;

"And WHEREAS, such firm has been dissolved ;

"And WHEREAS, I have agreed with the members of the
said late firm of W. H. Whitaker & Co., other than said W.
H. Whitaker, to compound or compromise my claim on them
individually, in respect of the said indebtedness to me of the
said late firm ;

"Now, therefore, this agreement witnesseth, that in consid-
eration of the sum of one dollar and other good and valuable con-
siderations to me, the said Henry Harbeck, paid by the said
members of the said late firm of W. H. Whitaker & Co., other
than the said W. H. Whitaker, at or before the time of sub-
scribing this release, I, the said Henry Harbeck, do hereby,
according to the statute in such case made, release, acquit and
forever discharge the said members of the late firm of W. H.
Whitaker & Co., other than said W. H. Whitaker, and their
estate or estates, and that of each of them, of and from all
individual liability, claim and demand whatsoever, for or in
respect to the said indebtedness to me of the said late firm.
Provided, however, that this present release is made pursuant
to section 1942 of the Code of Civil Procedure, and shall have
no greater or other effect than as by the said act and by this
release is provided ; and shall not release or discharge said W.
H. Whitaker or his estate, but shall operate to release and dis-

charge all and every person or persons other than the said W. H. Whitaker of and from any and all liability and obligation growing out of the indebtedness aforesaid. Nothing herein contained shall affect or impair a certain agreement dated August 20, 1885, by which certain claims and demands due the firm of W. H. Whitaker & Co. were to be held in trust for the said Harbeck; all the terms and provisions of the said agreement to remain in force notwithstanding this agreement."

Further facts are stated in the opinion.

*J. Tredwell Richards* for appellant. Agate was never liable upon the debt released, and the release was fruitless so far as he was concerned. (*In re Washington Park*, 52 N. Y. 131.) The note is not merged in the judgment, nor is the obligation of Agate on the note merged in the judgment. After the judgment the liability of Agate on the note sur- vived absolutely unaffected by the judgment. (*Candee* v. *Smith*, 93 N. Y. 351; *Harbeck* v. *Pupin*, 123 id. 115.) The note upon which this action is brought, and the judgment against Whitaker, Battershall & Grainger, are, to a certain extent, concurrent obligations, but because the obligations are concurrent it does not follow that they are identical, nor that a release from one will discharge the other. (*M. S. Bank* v. *Pierce*, 137 N. Y. 444; *Walsh* v. *Trevarion*, L. R. [12 Q. B.] 734; *Simons* v. *Johnson*, 3 Barn. & Ald. 175; 2 Roll. Abr. 409; *Paylor* v. *Homersham*, 2 M. & S. 423; *Moore* v. *Magrath*, 1 Cowp. 9; *Browning* v. *Wright*, 2 B. & P. 13; *Lyman* v. *Clark*, 9 Mass. 234; *Rich* v. *Lord*, 35 id. 322; *Jackson* v. *Stackhouse*, 1 Cow. 122; *Van Hagen* v. *Van Rensselaer*, 18 Johns. 420.) The release is in conformity with section 1942 of the Code. (*Harbeck* v. *Pupin*, 123 N. Y. 115; *Luddington* v. *Bell*, 77 id. 138.) Treating the release as one to Battershall and Grainger only, even if it had not been made pursuant to section 1942, the release of these two joint debtors would not have the legal effect of discharg- ing Agate, because, taking the release as a whole, it appears affirmatively, upon the face of the instrument, that it was not

intended to discharge Agate or any of the partners except Battershall and Grainger. (*Thompson* v. *Lock*, L. R. [3 C..B.] 540; *North* v. *Wakefield*, 13 Ad. & El. 535; *N. Ins. Co.* v. *Potter*, 63 Cal. 157; *Seymour* v. *Butler*, 8 Iowa, 304; *Burke* v. *Noble*, 48 Penn. St. 168; *Couch* v. *Mills*, 21 Wend. 434; *Hood* v. *Hayward*, 48 Hun, 330.) Even if the release to Battershall and Grainger had in terms released them from the note and not from the judgment, and had been in such form as would ordinarily have had the effect to discharge Agate also, yet, because Agate was a dormant partner, and the plaintiff, after due diligence and inquiry, had been unable to ascertain that he was a partner, the release can have no legal consequences as to Agate, and is ineffectual to discharge him. (*Robinson* v. *Wilkinson*, 3 Price Exch. 538.) Apart from the doctrine of estoppel, the release, if necessary, may be reformed or its construction limited, so as to exclude Agate, upon equitable grounds; namely, for mutual mistake, or for fraud on one side and mistake on the other. (*Kirchner* v. *N. H. S. M. Co.*, 135 N. Y. 182.) Even if this is not a proper case for reformation of the release, or for a construction which will give it effect according to equity and good conscience, and if the release be considered efficient to discharge Agate, unless rescinded as to him, yet the plaintiff may, nevertheless, treat it as rescinded as to him, and sue upon the original debt, as in this case plaintiff has done. (*Garry* v. *Hull*, 11 Johns. 441; *Tyson* v. *Doe*, 15 Vt. 571; *Clark* v. *Mayor*, etc., 4 N. Y. 338; *Merrill* v. *I. & O. R. R. Co.*, 16 Wend. 586; *Gould* v. *C. N. Bank*, 86 N. Y. 75; *Pierce* v. *Wood*, 23 N. H. 519; *Cobb* v. *Hatfield*, 46 N. Y. 533.)

*George C. Holt* for respondents. The release executed by Harbeck, dated March 18, 1886, is a bar to the action. (*Kirchner* v. *N. H.*, etc., *Co.*, 135 N. Y. 188; *Dambmann* v. *Schulting*, 75 id. 60; *Graham* v. *Meyer*, 99 id. 611; *Nevius* v. *Dunlap*, 133 N. Y. 676; *Kent* v. *Manchester*, 29 Barb. 595; *Stoddard* v. *Hart*, 23 N. Y. 556; *Brice* v. *Lorillard*

*Ins. Co.*, 55 id. 240; *Wilson* v. *Dean*, 74 id. 531; *Garham* v. *Bird*, 57 Barb. 277; *Albany, etc.,* v. *Burdick*, 87 N. Y. 47; *Thompsonville, etc., Co.* v. *Osgood*, 26 Conn. 16.) The plaintiff cannot repudiate the release without returning the consideration paid for it. (*Gould* v. *C. Bank*, 86 N. Y. 75; *Cobb* v. *Hatfield*, 46 id. 533; *McMichaels* v. *Kilmer*, 76 id. 46; *Shiffer* v. *Deitz*, 83 id. 300; *Graham* v. *Meyer*, 99 id. 611; *Allison* v. *Abendroth*, 108 id. 475; *Allerton* v. *Allerton*, 50 N. Y. 670; *Vail* v. *Reynolds*, 118 id. 297.) If the release of March 18, 1886, notwithstanding its terms, should be construed to be a release to Battershall and Grainger only, as claimed by the plaintiff's counsel, it nevertheless had the effect of releasing Agate, even if he was a partner, because it was not executed in compliance with the statute, permitting the release of some joint debtors without releasing others. (Code Civ. Pro. § 1942; *Harbeck* v. *Pupin*, 123 N. Y. 119.) There was not sufficient competent evidence that Agate ever became a member of the firm of Whitaker & Co. to be submitted to the jury. (*Richardson* v. *Hughitt*, 76 N. Y. 58; *Eager* v. *Crawford*, 76 id. 97; *Barnett* v. *Snyder*, Id. 344; *Curry* v. *Fowler*, 87 id. 33; *Clift* v. *Barrow*, 108 id. 187; Code Civ. Pro. § 829; *Connelly* v. *O'Connor*, 117 N. Y. 91; *Nelson* v. *S. M. Ins. Co.*, 71 id. 460; *Ten Eyck* v. *Bill*, 5 Wend. 55; *Doty* v. *Wilson*, 14 Johns. 378; *Bank of Utica* v. *Mersereau*, 3 Barb. Ch. 585.) There was absolutely no evidence in the case that Grainger ever knew of or consented to Agate's alleged introduction into the firm of Whitaker & Co. (*Burnett* v. *Snyder*, 76 N. Y. 347.) Assuming that Agate was a member of the firm, and continued to be such until its suspension, this action cannot be maintained, because the note was given without his knowledge or assent after the dissolution of the firm. (*Spaulding* v. *Kelly*, 43 Hun, 306.) The plaintiff failed to establish a cause of action because the judgment against Whitaker, Battershall and Grainger was satisfied by the two releases given by Harbeck. (*Robertson* v. *Smith*, 18 Johns. 459; *Oakley* v. *Aspinwall*, 4 N. Y. 542; *Olmstead* v. *Webster*, 8 id. 413; *Suydam* v. *Barber*, 18 id.

468; *Candee* v. *Smith*, 93 id. 349; *Kendal* v. *Hamilton*, L. R. [3 C. P. Div.] 403; L. R. [4 App. Cas.] 504; Code Civ, Pro. §§ 1492, 1493.) There are no equitable grounds of liability in this case. (*Armstrong* v. *Stokes*, L. R. [7 Q. B.] 604.)

FINCH, J. The fundamental question in this case is the true construction of the release upon which the defendant relies.

We regard that release, executed by Harbeck, as broad enough to discharge Agate, assuming that the latter was a dormant partner in the debtor firm. The criticism of the appellant is very narrow and technical, and founded upon one expression in the instrument, with an entire disregard of its manifest scope and meaning. That criticism is that the release, by its terms, only discharges the judgment and operates upon that, and does not discharge the debt for which the judgment was confessed; and such construction is founded upon the statement in the release that the firm is indebted to Harbeck in the sum named "by virtue of a judgment," whereby, it is claimed, the discharge granted from the said indebtedness means solely and alone that evidenced by the judgment, and, therefore, necessarily includes only the judgment debtors and excludes Agate. But the instrument, by its explicit terms, negatives that construction. It does not run to Battershall and Grainger by name and purport to release them alone, or confine its terms or its operation to the defendants in the judgment. It acknowledges an agreement of composition, not with Battershall and Grainger merely, but with "the members of the firm of Whitaker & Co. other than Whitaker;" language not confined to two of the judgment debtors, but explicitly embracing all the members of the firm with the one exception. And that agreement is declared to be, not to simply discharge a judgment against two, but, as it reads, "to compromise my claim on them individually in respect to the said indebtedness to me of the said late firm." That must necessarily be construed to mean the entire debt of the firm,

however that firm was composed or whoever might constitute
its members.   It then proceeds to release the members of the
late firm other than Whitaker from liability for or in respect
of the said indebtedness of the said late firm, and very con-
clusively fixes the intent and meaning of the parties by the
further statement that it shall operate to release and discharge
"all and every person or persons other than the said W. H.
Whitaker of and from any and all liability and obligation
growing out of the indebtedness aforesaid." That was not,
as is contended, a mere general clause to be restricted by a
narrower and special statement preceding, for there was none
of that character, but it was a further explanation of a pur-
pose already stated, entirely consistent with it, and meant
to put the meaning of the parties beyond any reasonable
doubt.  "Any and all liability and obligation growing out
of the indebtedness aforesaid," covered the original account,
the note which expressed it, and the judgment which
secured it, and from that liability, whatever its form, all
persons, and every person other than Whitaker, were to
be released.   The creditor must have been very blind not to
understand that, as the condition of receiving three thousand
dollars in cash and certain specified notes, he was required to
discharge, not merely two judgment debtors, but his claim
against every member of the firm other than Whitaker.  That
he did not know that there was any other does not matter.
It is not even yet certain that there was, but if there was or
should be such an unknown person the release plainly covered
his liability; was intended to cover it by those who paid for
it, and must have been understood to cover it by the creditor
who executed it.   The trouble is not that he did not under-
stand its obvious meaning, but that he was ignorant of facts
which now make it much more important than at the time he
imagined it to be.   The use of the words "said" and "afore-
said" are the links by which the appellant seeks to connect
the whole range of the covenant with the judgment merely,
because incidentally the debt is described by reference to the
judgment confessed to secure it, but the terms employed pass

beyond the judgment merely in two ways. They relate to the indebtedness, using that broad expression continually, and describing it as that of the late firm, and then they pass beyond the judgment debtors and embrace all the members of the late firm other than the one excepted member. It seems to me very clear that the release cannot be limited to the judgment debtors alone, but does discharge every member of the dissolved firm except Whitaker.

But the appellant next changes his position and assails the release for fraud. I am not sure that he has left himself the right to assume that attitude. In his complaint he sets up the release as forming no obstruction to his remedy. He does not allege it to be fraudulent. He does not ask any relief against it. He seeks neither to reform it nor to rescind it. On the contrary he assumes its validity and plants himself upon its construction. Possibly he might have omitted all reference to it and left himself free to fight it on any ground when it appeared as a matter of defense. But he did not choose to do that, and, by the form of his pleading, admits the validity of the release, but claims that it failed to cover the liability of the dormant partner. He now seeks to change position without any amendment of his pleading, and after more or less misleading his adversary. And, even at the close of the evidence, when a motion is made for a non-suit, he does not ask to go to the jury on any question of fraud. He was not bound to ask it, I grant, but his omission indicates that he had not yet changed the issue raised by his pleading. Yet the evidence on which he relies is in the case, though taken under the defendants' objection, and it would be at least a narrow and perhaps a doubtful conclusion to dispose of it as a matter of pleading, except in so far as the questions raised are consistent with the assumed validity of the instrument. For I do not understand now that the appellant claims to rescind for fraud. It is difficult to see how he could do so in view of the fact that he retains the fruits of his arrangement and is holding on to the money of Agate, knowing it to be his, and which was

paid for the very release assailed ; but it is sufficient to say that the point in the appellant's brief which goes upon a rescission for. fraud was formally withdrawn on the argument, and leaves open only the questions of estoppel and of reformation.

I can see no ground of estoppel.   The claim in that direction is only a disguised form of the abandoned effort to rescind, for what is asked is that, on the ground of fraud, the instrument shall not have its legal construction as to Agate, or in substance and effect to annul and rescind the discharge as against him.   Calling it estoppel does not modify its character as rescission.   And since the instrument is to stand and is not to be rescinded as between the litigating parties, the office of an estoppel must necessarily be to prevent the defendants from putting the intended and legal construction upon the instrument.   But the form and shape of the release was the work of Agate through his attorney, Root.   Neither at that time made any representation at all.   Six months before Root, for the purposes of a confession of judgment, had given the names of the firm, not mentioning Agate.   There is not a particle of proof that Root at that time represented anybody but the three known partners or had the least authority from Agate, or knew of a single fact which would tend to make the latter liable as a partner.   Root told the truth as he understood it, but, at all events, never represented Agate or had any authority to represent him until the date of the release. It was then, for the first time, that Root acted for Agate or by his authority as a matter of fact, and an estoppel for fraud which shuts out the truth in the interest of justice should not be based upon some constructive authority having no foundation in fact.   Indeed, I think the suggestion of an estoppel is entirely inapplicable to the situation.   The doctrine I understand to be that where a party, by conduct or words, represents one state of facts, knowing or intending that the other party will or shall rely upon them as true, and shape his conduct by them, which representations are untrue, the party making them shall not thereafter be allowed to show their untruth or contradict the statement of fact by which he

induced the action of the other party. Now, the representation here, stated in its broadest possible form, was that Agate was not a member of the firm. An estoppel would simply prevent a denial of that assertion and compel Agate to adhere to it. But he is not seeking to prove the contrary. He adheres to it still. He proves nothing inconsistent with it, for the release itself, legally construed, involves neither an admission nor assertion by Agate that he was a member. It guards against such an assertion by others and shuts off from litigation a denial of the truth of the representations by making such denial useless.

Nor is there furnished by the facts any ground for what is called a reformation of the instrument. This again is a disguised effort to rescind the release, wholly and utterly, as between Harbeck and Agate. There is not even a claim that there is a single word in it which both parties did not understand and entirely and fully agree should be there. It expresses the agreement as at the time actually made. The real trouble is not that it does not contain the actual contract made, but that the plaintiff might not have made it if he had inquired about the facts and been told the truth. A reformation can only be permitted in any case by a decree in equity. There is no pleading to justify it — no such relief asked for — and the attitude of the plaintiff does not admit of it. On the witness stand he says : " I have never offered to pay back the $3,000 paid me on taking this release. I hang on to that of course. \* \* \* I hang on to those four notes. \* \* \* I will collect those notes if I can." And yet, holding the fruits of the agreement, and refusing their surrender, he seeks to reform it out of existence, to annul it utterly as a contract operative between himself and Agate. There is no basis for any such reformation.

There is a further proposition suggested. Authorities are cited to the purport that where one deals with a known member of a firm, so as to discharge him, the release does not operate to set free an unknown and dormant partner. The case specifically relied on is that of *Robinson* v. *Wilkinson* (3

Price Exch. 538). What it holds is applicable only to a case where no release actually discharging the dormant partner has been executed, but his discharge is claimed under the common-law rule that a discharge of one is a discharge of all. That was the legal inference from the act and, possibly, was not invariably drawn in behalf of a dormant or unknown partner. But here the discharge comes not from a legal inference, which may be restrained or modified, but from an express covenant to release the dormant partner. The question is not one of inference from ambiguous acts, but of an actual contract for a discharge.

It is unnecessary to discuss other questions argued, and the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.